# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN  DIVISION

| | | |
|---|---|---|
| **KENNETH GREER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **1:06-CV-1540-VEH** |
| **HONDA MANUFACTURING OF** | ) | |
| **ALABAMA, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

Before the court is the Motion of the Defendant, Honda Manufacturing of

Alabama, L.L.C. (hereinafter "HMA"), for Summary Judgment as to the claims of the

Plaintiff, Kenneth DeWayne Greer (hereinafter "Plaintiff"), filed on April 17, 2007.

(doc. 12).  For the reasons set forth herein, the motion is due to be **GRANTED**.

## I.    FACTUAL HISTORY[1]

---

[1]  The designation "AF" stands for admitted fact and indicates a fact offered by HMA that
Plaintiff has admitted in his written submissions on summary judgment, in his deposition
testimony, or by virtue of any other evidence offered in support of his case.  Whenever Plaintiff
has adequately disputed a fact offered by HMA, the court has accepted Plaintiff's version. The
court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of HMA's
Statement of Facts as set forth in Doc. #13 and responded to by Plaintiff in Doc. #15.  A number
following a decimal point corresponds to the particular sentence within the numbered statement
of facts.  For example, (AF No. 5.2) would indicate that the second sentence of paragraph 5 of
HMA's Statement of Facts is the subject of the court's citation to the record. Similarly, the
designation "AAF" stands for additional admitted fact and corresponds to Plaintiff's Statement of

Plaintiff is a resident of Attalla, Alabama, and was, at all times relevant to this action, employed by the Town of Sardis City, Alabama, in a full-time, permanent maintenance position where he currently earns $10.00 per hour.  (AF # 48; Pl. Dep. pp. 12, 55).  Plaintiff's primary work duties include electrical and plumbing maintenance, carpeting, painting, and repairing machinery and vehicles owned by his employer.  (AF # 47; Pl. Dep. pg. 56).

In July 2002, while working for the Town of Sardis City, Plaintiff began the application process for a position with HMA at its plant in Lincoln, Alabama.  (AF. # 50; Def. exh. 13; Pl. Dep. pg. 11).  The application process for employment at said plant is apparently very competitive, as more than 40,000 applications had been, at the time this action was filed, submitted to fill 4,500 positions.  (AF # 1, 2).

Plaintiff learned that HMA was hiring for various positions at its Lincoln plant through an advertisement in the Gadsden Times.  (AF # 50; Pl. Dep. pg. 85).  To begin the application process, the advertisement directed interested individuals to obtain an application from the State of Alabama, through the State's Industrial Development Training department (hereinafter "AIDT").  (AF # 7, 8).  Selected applicants were invited to a pre-employment interview conducted by AIDT.  (AF #

---

Facts contained in Doc. #15 and responded to by HMA in Doc. #21.  Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

9).  After completing his interview with AIDT, Plaintiff was invited to participate in pre-employment training with AIDT in September 2002.  (Pl. Dep. pg. 90-91; Def. exh. 7).  Said training began in October 2002 and lasted five weeks, excluding holidays.  (AF # 54).

Candidates who completed AIDT training attended a graduation ceremony, then received instructions on applying for employment with HMA.  (AF # 57).  Plaintiff applied for a position as an Equipment Service Associate (hereinafter "ESA") on January 8, 2003.[2]  (AF # 58; Def. exh. 13).

Plaintiff participated in a telephone screen, conducted by the State of Alabama, on January 21, 2003.  (AF # 62).  The following day, Plaintiff interviewed with HMA at a facility owned by AIDT.  (AF # 64; Pl. Dep. pg. 110).  The interview was conducted by at least three individuals who wore a white Honda uniform, later identified as engineers in the HMA Paint Department.  (AF # 65).

On March 22 or 23, 2003, HMA sent Plaintiff a letter with a conditional offer of employment as an ESA, conditioned upon his successful completion of a medical examination.[3]  (Pl. Dep. pp. 117-119; AF # 67.1; Johnson Dep. pg. 53).  Plaintiff

_____

[2]  HMA considers the ESA position to be a "higher-paying skilled position" that requires an associate to repair equipment throughout HMA's plant.  (AF # 6).  The position carries a starting hourly pay rate of $20.06, with a maximum of $26.68 per hour.  (AF # 5).

[3]  The actual condition(s) of the "conditional offer of employment" are in dispute and are central to Plaintiff's claims in this action.  Plaintiff avers that his completion of a medical

submitted to said examination on March 31, 2003, after which he was measured for a work uniform and asked what name he would like to be sewn into his uniform. (Pl. Dep. pp. 116-117; Johnson Dep. pg. 56; doc. 14, exh. 13, pg. 51 of 55). Plaintiff was also allegedly told by the medical staff who performed the examination that he should be "hearing something within so many weeks." (Pl. Dep. pg. 134). Plaintiff apparently understood this to mean that HMA would be contacting him soon with an official date when he could begin work as an ESA at its Lincoln plant. (Id.).

During the next thirteen months, however, Plaintiff did not receive a start date from HMA, or any other official correspondence from HMA regarding the status of his application. (Pl. Dep. pg. 135). At some point prior to April 2004, Plaintiff telephoned HMA regarding his application and was told by an unidentified HMA associate that he was still being considered for an ESA position. (Id. at 117-118). The associate informed Plaintiff that "things still looked favorable for [him]," but did not otherwise state that Plaintiff had been hired.[4] (Id. at 118).

_____

examination was the only condition to said offer. HMA argues that the offer also contained a second condition: that an ESA position actually become available before Plaintiff could officially be hired. There is no written submission on record containing the exact language of the conditional offer allegedly made by HMA in 2003. However, Plaintiff admits that the letter was identical to a second conditional offer letter that he received from HMA more than one year later, in April 2004. (Def. exh. 13; AF # 74). The text of said letter is detailed *infra*.

   [4] Plaintiff has conceded that at no point during said conversation was he guaranteed that he would be hired by HMA or that he would receive a specific start date for employment with HMA. (Pl. Dep. pg. 118). The individual with whom he spoke during the conversation is not identified in the record.

In April 2004, Plaintiff received a second letter from HMA which requested that he submit to a second medical examination "to assure that [HMA] ha[d] current accurate medical information" with Plaintiff's application. (Def. exh. 12).[5] Plaintiff submitted to a second medical examination later that month, after which he was again measured for a work uniform and asked what name he would like sewn into his uniform.[6] (Def. exh. 13; doc. 14, exh. 13, pg. 38 of 55).

Approximately one week later, Plaintiff received another letter from HMA that explained, in its entirety, as follows:

April 26, 2004

Dear Kenneth:

On behalf of Honda Manufacturing of Alabama, LLC, I would like to extend you a conditional offer of employment as a Equipment Service Associate. This offer is conditional pending the results of your medical examination, which is scheduled for Tuesday, April 20, 2004 at 11:00:00 AM.[7]

---

[5] Said request was apparently a standard procedure by HMA to ensure that its medical information remained current for candidates who had applied for employment and submitted to a medical examination more than one year previously. (Def. exh. 12).

[6] Both the 2003 and 2004 physical examinations were scheduled at the request of HMA, by HMA human resources personnel, and occurred at the HMA plant in Lincoln, Alabama. (Johnson Dep. pp. 69-70; Pl. Dep. pp. 121, 135). The examinations were performed by staff members of Concentra Medical Centers, a third-party contractor with HMA with no authority to make hiring decisions for HMA. (AF # 24).

[7] While the letter is dated April 26, 2004, the record contains no explanation as to why it refers to Plaintiff's April 20 medical examination as a future event. (Def. exh. 13). As explained *supra*, said letter was identical to a letter Plaintiff received prior to his first medical exam in

Your application will remain in the HMA hiring process until selected for a position.  Due to the current volume of hiring we are not able to provide a time frame that you could be contacted and given a specific start date.

HMA Equipment Service Associates currently have a starting hourly rate of $20.06 and overtime is paid at 1.5 times the hourly pay rate. Enclosed is a list of benefits the HMA associates and their family members will be eligible for when they are hired.

Please do not resign from your current employer until you receive a confirmed hire date from a representative of HMA.

Employment with Honda Manufacturing of Alabama is a challenging and rewarding opportunity.

Sincerely,
Lynn Johnson
Human Resources/Staffing
Enclosure:  Non-Exempt Benefit Highlights

(Def. exh. 13).

On June 2, 2004, Plaintiff received a third letter from HMA, alerting him that HMA would soon be placing advertisements in newspapers across the state to create a new AIDT applicant training pool.  (Def. exh. 14).  The letter instructed Plaintiff that candidates who had already completed pre-employment training or had been interviewed by HMA need not reapply.  (Id.).  The letter explained to Plaintiff that "[a]s a recipient of this letter, you are assured that you are currently in our system and

March 2003.  (AF # 74).

6

no further action toward re-application is required."  (Id.).

Some time after receiving this letter, at a point unspecified in the record, Plaintiff inquired with HMA into why he had not received a specific start date.  (AF # 81; Pl. Dep. pg. 132).  In response, Plaintiff was told that he was "still in the pool." (Pl. Dep. pg. 132).

In May 2005, Plaintiff received a final letter from HMA, which provided, in relevant part,

> Thank you for your interest in Honda Manufacturing of Alabama, LLC ("HMA") and for your time in discussing your career goals and possible opportunities at HMA.  After careful review of the Equipment Service Associate job requirements, we do not have an opportunity for you.

(Def. exh. 15).

During the application process between July 2002 and May 2005, Plaintiff was offered six other employment opportunities, all of which offered pay rates in excess of his earnings with the Town of Sardis City and less than he would have earned as an ESA with HMA.[8]  He rejected all of them, allegedly in reliance on

---

[8]  Specifically, Plaintiff was offered a position as (1) an apparel manufacturer at Standard Apparel in Enterprise, Alabama, at a pay rate of $18 per hour, in July 2003 (Pl. Dep. pp. 176-181); (2) a technician with U.S. Steel in Birmingham, Alabama, also for $18 per hour, in late 2003 (Id. at 190-197); (3) a Maintenance Superintendent with Tyson Foods in Albertville, Alabama, for $14.35 per hour, in March 2004 (Def. exh. 16); (4) a sewing machine mechanic at Kappler, a manufacturer of disposable uniforms in Guntersville, Alabama, for $14.00, in April 2004 (Def. exh. 17; Pl. Dep. pg. 156); (5) a sewing machine repairman at an unnamed sewing machine plant in Anniston, Alabama, for $15.00 per hour, in late 2004 (Pl. Dep. pg. 177); and (6) a service advisor for Nissan of Gadsden, Alabama, for $23,400 plus a commission, in March

HMA's conditional offer letters received in March 2003 and April 2004.  (Pl. Dep. pp. 156-197).  However, because Plaintiff's claims in this action arise only out of the 2004 offer letter, he asserts claims for damages relevant only to events that occurred after April 2004, and the three employment opportunities he declined since that date. (Compl. ¶¶ 2(a), (c)).

As of the time of this action, Plaintiff continues to be employed by the Town of Sardis City in the position described *supra*.

## II.    PROCEDURAL HISTORY

On June 29, 2006, Plaintiff filed his Complaint against HMA in the Circuit Court of Talladega County, Alabama.  (Compl. (doc. 1, exh. 2); Def. exh. 19).  In his Complaint, Plaintiff asserts claims against HMA for fraud and negligence/wantonness related to its conditional offer letter of April 2004.  (Compl., ¶¶ 3, 7).

HMA removed the action to this court on August 7, 2006, on the basis of

_____

2005 (Def. exh. 18).

Plaintiff did not actively seek any of these employment opportunities.  (Pl. Dep. pp. 176, 181, 194, 197).  After he was informed that he would not be hired by HMA, each of the above-described positions (with the exception of Tyson Foods) had either been filled by another candidate or had been terminated due to lay-offs or plant closings.  (Id. at 201-205).  Plaintiff did not seek the position that had been available at Tyson Foods because he alleged that a friend who had worked there when he was first offered a position with that company had since left employment there, and he did not wish to pursue the opportunity thereafter.  (Id. at 198).

diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441(a).[9]  (doc. 1).  After

_____

[9]  The court acknowledges that jurisdiction is proper in this action pursuant to the above-cited provisions.  HMA is a limited liability corporation, the sole member of which is American Honda Motor Company, Inc., a California corporation.  (doc. 1, ¶ 12).  *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("a limited liability company is a citizen of any state of which a member of the company is a citizen").  Plaintiff is a citizen of Alabama.  (Id., ¶ 11).

As to the amount in controversy requirement, Plaintiff sought only $70,000 in damages in his original State court Complaint.  (Def. exh. 19, pg. 4).  However, Plaintiff has not contested the removal of this action.  On July 26, 2007, the court ordered HMA to show cause why this action should not be remanded to State court for lack of diversity jurisdiction due to an insufficient amount in controversy.  (doc. 22).  HMA filed a response in support of removal, explaining that, if Plaintiff prevails on liability, he must recover at least $84,656.00 for his lost potential income claim alone, based on his expected earnings with HMA of $20.06 during the two years since the 2004 conditional offer was made.  (Shroyer Aff. ¶ 7).  Said amount does not include any possible overtime Plaintiff might have earned, at a rate of $30.96 per hour, or Plaintiff's claim for lost potential employment benefits with HMA, which are valued at approximately $28,000, or his request for damages for mental distress and anguish and punitive damages.  (See Shroyer Aff. ¶¶ 6, 8).  Additionally, according Plaintiff's responses to HMA's First Request for Admissions and his Rule 26 disclosures, Plaintiff is uncertain as to the "exact value" of his claims prior to the close of discovery, and would not stipulate that he would limit his damages claim to $70,000.00.  (doc. 23, exh. 2, ¶ 2; doc. 23, exh. 3, ¶ C).

The court acknowledges that, on August 7, 2007, Plaintiff filed an "Amendment to Complaint" in which he sought to change his damages request from $70,000 to $100,000.  (doc. 24).  However, according to FED. R. CIV. P. 15(a), Plaintiff may amend his Complaint once as a matter of course before a responsive pleading has been filed.  HMA filed its Answer on August 14, 2006.  (doc. 2).  Hence, Plaintiff may not amend his Complaint without the permission of the court.  The court, therefore, deems the "Amendment to Complaint" a Motion to Amend Plaintiff's original complaint.  However, the "Amendment to Complaint" refers only to the amount of damages Plaintiff seeks, and contains no reference to Plaintiff's claims or the facts alleged in support thereof.  Therefore, because the court finds that summary judgment is due to be granted as to Plaintiff's Complaint, and because Plaintiff's Amendment to Complaint would not alter the court's analysis in granting judgment to HMA, the court finds that Plaintiff's Motion to Amend is due to be **DENIED** as futile.  *See McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) ("In the absence of any apparent or declared reason – such as . . . futility of amendment, etc.– the leave sought should, as the rules require, be 'freely given.' " (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L. Ed. 2d 222 (1962); *see also Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004) (explaining that despite the "freely given" language of Rule 15(a), leave to amend can be denied on grounds such as undue delay, prejudice, or futility); *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004)

the close of discovery on March 15, 2007, HMA filed the pending Motion for

Summary Judgment on April 17, 2007.  (doc. 12).  Plaintiff filed his Response in

Opposition to the Motion for Summary Judgment on May 8, 2007.  (doc. 15).  HMA

filed its Reply brief on May 21, 2007.  (doc. 21).

## III.   STANDARD OF REVIEW

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law."  *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023

(11th Cir. 2000).  The party asking for summary judgment always bears the initial

responsibility of informing the court of the basis for its motion, and identifying those

portions of the pleadings or filings which it believes demonstrate the absence of a

genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party has

---

(a court may deny leave to amend if it is found that the proposed amendment is futile).

Additionally, the court has considered the amount in controversy only as reflected by the original
Complaint, HMA's response to the court's Show Cause Order, and the facts presented in the
record.

Being satisfied that the above-described evidence demonstrates, to a legal certainty, that Plaintiff
cannot recover less than $75,000 if he prevails on liability, the court concludes that the requisite
amount is in controversy.  *See Burns v. Windsow Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).
Therefore, the court may properly exercise jurisdiction in this action.

met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant.  *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248;  *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17, citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine

issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in

the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

## IV.    ANALYSIS

In his Complaint, Plaintiff asserts two bases of liability against HMA, (1) fraud (Compl., Count One) and (2) negligence/wantonness (Id., Count Two). The court will address each count separately.

### 1.    Fraud

Plaintiff supports his claim of fraud by arguing that HMA "[led] him to believe that he was employed by HMA," when it apparently either had no intention of hiring him, or initially planned to hire him but later retracted the offer after Plaintiff relied thereon to his detriment. (Pl.'s Opp. Br. at 10).

To state a viable claim of fraud, Plaintiff must demonstrate that (1) HMA has made a false representation (2) of a material existing fact (3) on which Plaintiff reasonably relied, and (4) which proximately caused injury or damage to Plaintiff. *Smith v. Smith*, 820 So.2d 64, 73 (Ala. 2001), citing *Goodyear Tire & Rubber Co. v.*

13

*Washington*, 719 So.2d 774, 776 (Ala.1998).

In *Wade v. Chase Manhattan Mtg. Co.*, 994 F.Supp. 1369, 1378-79 (N.D.Ala. 1997), the court explained that

> [t]he only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future . . . is when the evidence shows that, at the time . . . the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive. *Robinson v. Allstate Insurance Company*, 399 So.2d 288 (Ala.1981). If such intent is not substantiated by the evidence, the fraud claim should not be submitted to the jury. The failure to perform, alone, is not evidence of intent not to perform at the time the promise was made . . . *First Bank of Boaz v. Fielder*, 590 So.2d 893 (Ala.1991). [ ] The required showing of an intent not to perform at the time [ ] the misrepresentation was made and the intent to deceive are in addition to the four elements that must be established in an ordinary misrepresentation case. *Palm Harbor Homes, Inc. v. Crawford*, 689 So.2d 3 (Ala.1997). "[T]he law places a heavier burden in those fraud actions where one attempts to prove fraud based on a misrepresentation relating to an event to occur in the future." *National Security Ins. Co. v. Donaldson*, 664 So.2d 871, 876 (Ala.1995).

> Statements asserting that a person will be given a particular job or certain working conditions, including [a] compensation and commission scheme at some future time are allegations of promissory fraud because the representation is a promise to take action in the future. *See National Security Ins. Co. v. Donaldson*, 664 So.2d 871, 876 (Ala.1995) (promise that plaintiff would be promoted to vice president following the retirement of the vice president and plaintiff would have permanent employment with National Security); *Johnston v. Green Mountain*, 623 So.2d 1116 (Ala.1993) ([i]nducement to leave present employment and work for defendant based on a promise as to a compensation and commission scheme); *Armstrong v. Flowers Hospital*, 812 F.Supp. 1183, 1192-93 (M.D.Ala.1993), *aff'd*, 33 F.3d 1308 (11th Cir.1994)

(agreement by hospital to purchase her scholarship as a condition of employment).

(Emphasis added).

In *Donaldson*, the Alabama Supreme Court explained that "[when the] allegations [are] of promissory fraud, [the plaintiff] ha[s] the burden to produce evidence to show that [the defendant] had a deceitful intention not to perform [the] actions [promised]." 664 So.2d at 876. Similarly, in *Johnson*, the Alabama Supreme Court instructed that

> [p]roof of the following elements is necessary to sustain an action for promissory fraud: (1) a misrepresentation, (2) of a material existing fact, (3) upon which the plaintiff justifiably relied, (4) which proximately caused injury or damage to the plaintiff. . . . In addition, the plaintiff must show that, at the time of the alleged misrepresentation, the defendant intended not to do the acts promised and intended, instead, to deceive the plaintiff.

623 So.2d at 1121.

Plaintiff points out that, according to HMA's 2004 conditional offer letter to him, the only condition to the employment offer was his successful completion of a medical examination. (Def. exh. 13). Once he satisfied this condition, he argues, he was assured employment with HMA.

HMA responds that at no point during the application process, including the offer letter of April 204, was Plaintiff ever guaranteed a position with HMA, and

hence, it never represented to Plaintiff that he had been hired.  HMA points to various parts of the record where Plaintiff was told he was not guaranteed employment simply because he had applied for a job with HMA.[10]  However, the evidence cited by HMA in support of this argument is inapposite.  Plaintiff does not argue that he was guaranteed employment with HMA when he first applied for a position in January 2003.  Rather, Plaintiff asserts that HMA offered him employment on April 26, 2004 via letter, which contained only one condition to the offer – a successful medical examination – which Plaintiff completed after his receipt of said letter.  Hence, any evidence that HMA had not guaranteed Plaintiff employment prior to his receipt of this letter is unresponsive to Plaintiff's argument.

Turning to the elements of Plaintiff's fraud claim, however, the court finds the evidence of record is insufficient to establish that HMA ever represented to Plaintiff that he had been officially hired.  The court acknowledges Plaintiff's argument that

_____

[10] Specifically, HMA points to the following:  (1) Plaintiff's employment application, which Plaintiff signed on January 8, 2003, explaining that "I [Plaintiff] understand that the submission of this application for employment to [HMA] does not create a promise of employment or the creation of an employment relationship"  (Def. exh. 9, pg. 3); and (2) Plaintiff's agreement to HMA's pre-employment terms, also signed on January 8, 2003, providing that "[t]he fact that I have completed the pre-employment process thus far does not mean there are positions open, a job offer will be made or that [HMA] is in any way obligated to hire me," "After a conditional offer of employment is made, I hereby consent to a complete physical examination, drug testing and a functional capacity evaluation," "Prior to an offer of employment, if one is made, thorough reference and background checking will be performed, which I authorize," "There are many factors taken into consideration in deciding whether or not I will be made a job offer," and "The decision to hire or not to hire is reserved solely by [HMA]" (Def. exh. 10).

only one condition – a medical examination – to the offer of employment was expressly stated by HMA in the offer letter. (Def. exh. 13). However, the letter also instructs Plaintiff that his application would remain in the hiring process "until selected for a position." (Id.). Such indicates that Plaintiff had not, at the time the letter was sent to him, been selected for a position, and until he was selected, his employment status with HMA would not change. Moreover, the letter also provides that Plaintiff should not resign his current employment until he received a "confirmed hire date," indicating further that Plaintiff had not yet been hired. (Id.). The court finds no basis in the offer to contradict this conclusion.

Plaintiff, however, attempts to support his claim by asserting that he spoke with various individuals who appeared to work for HMA, because they "had some Honda stuff on," inside a Wal-Mart store during his thirteen-month wait to receive a start date from HMA. (Pl. Dep. pp. 122-124). Said individuals allegedly told Plaintiff he could expect to be hired by HMA. (Id.). However, the record is void of evidence that these unidentified individuals had any authority to make such representations to Plaintiff. Plaintiff has conceded that he had no knowledge of whether these individuals were involved in hiring or staffing at HMA, and has asserted no argument that the individuals acted with apparent authority to make hiring decisions for HMA. (Id. at 123). Hence, the court sees no reason to consider such as evidence of official

17

correspondence from HMA regarding the status of Plaintiff's application.

The parties do not appear to dispute that the second element of Plaintiff's fraud claim is satisfied. However, Plaintiff has not presented evidence in satisfaction of the third element of his claim, that Plaintiff "reasonably relied" on a false representation by HMA. Because HMA did not represent to Plaintiff that it had hired him, Plaintiff could not have reasonably relied upon such a representation in declining three employment opportunities after April 2004.

Plaintiff avers, however, that he reasonably relied on HMA's representations to him that he had been hired. Had he not been hired, Plaintiff argues, he should not have been measured for an HMA uniform, or told by Concentra staff members that he should expect to receive a start date from HMA within the following several weeks. While the court is mindful of this argument, the court is uncertain why Plaintiff should have relied on such representations when identical representations had been made to him a year before and Plaintiff still had not received a start date thereafter. (See Pl. Dep. pp. 116-17, 134; doc. 14, exh. 13, pg. 51 of 55). Given Plaintiff's history of receiving these representations without actually receiving a confirmed hire date from HMA, the court cannot agree that Plaintiff reasonably assumed that such representations in 2004 indicated he had been hired.

As to the fourth element of Plaintiff's fraud claim, Plaintiff offers no basis in

law for the court to conclude that his injury – declining three employment offers after April 2004 – was proximately caused by HMA.  Instead, Plaintiff argues merely that his reliance on the conditional offer letter was "clearly foreseeable," because HMA did not specifically instruct him <u>not</u> to decline other employment opportunities while he waited to receive a start date.  However, for the same reasons discussed pursuant to the reasonableness of Plaintiff's reliance on the offer letter, the court disagrees that such reliance was foreseeable.

Moreover, Plaintiff appears to have independently chosen to decline the three employment opportunities in reliance on the 2004 conditional offer letter.  Nothing in said letter – or any representations made by HMA to Plaintiff contained in the record – indicates that HMA instructed Plaintiff to decline other offers of employment during his 13-month wait to receive a start date from HMA.  The court finds no evidence that Plaintiff's application with HMA would have been rejected or undermined in any way had he accepted other employment during his wait.  Nothing in the record indicates that HMA assured him during the thirteen months following his receipt of the 2004 letter that if he continued waiting, and declined other employment opportunities, he <u>would</u> be hired.  Therefore, the court finds no basis to conclude that Plaintiff's decision to decline other employment was not of his own volition, because he admittedly preferred to work for HMA than any other employer

that offered him a job during the times relevant to this action.  (See Pl. Dep. pg. 209).

Accordingly, the court finds that any injury suffered by Plaintiff due to his rejection of other employment opportunities was not proximately caused by HMA's representations to him during the hiring process.

Finally, even if Plaintiff had demonstrated the first four elements of his fraud claim, the court finds no evidence in the record that HMA acted with an intent to deceive Plaintiff by sending him the conditional offer letter in 2004.  Indeed, Plaintiff has conceded that he knows of no facts that anyone at HMA intended to mislead him, or that HMA was even careless in its communications with him during the application process.  (Pl. Dep. pp. 145-146).

Despite the foregoing, however, Plaintiff argues that his fraud claim stands, based on the Alabama Supreme Court's decision in *Smith v. Reynolds*, 497 So.2d 93 (Ala. 1986).  In *Smith*, the court explained that

> [f]raud by misrepresentation of a material fact is defined in Alabama Code (1975), § 6-5-101:
>
> "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
>
> An innocent misrepresentation is as much a legal fraud as an intended misrepresentation and the good faith of a party in making what proves to be a material misrepresentation is immaterial as to the question whether there was an actionable fraud if the other party acted on the

misrepresentation to his detriment. *Maring-Crawford Motor Co. v. Smith*, 285 Ala. 477, 233 So.2d 484 (1970).

In order for [a plaintiff] to recover damages for an innocent mistake amounting to a legal fraud, [he] must show: (1) that there was a false representation; (2) that it concerned a material fact; (3) that it was relied upon by [him]; and (4) that [he] was damaged as a proximate result of the reliance. *Mahoney v. Forsman*, 437 So.2d 1030 (Ala.1983).

*Smith*, 497 So.2d at 95.

The standard set forth in *Smith* is considerably easier for Plaintiff to satisfy than that applied by the district court in *Wade*, as it apparently requires no proof of intent by HMA to deceive Plaintiff. Nevertheless, as explained *supra*, the court cannot conclusively find that HMA made any false representation to Plaintiff. This court concludes that Plaintiff's fraud claim, even under this less-stringent standard, still fails.[11]

---

[11] Plaintiff also cites to *Kidder v. AmSouth Bank, N.A.*, 639 So.2d 1361 (Ala. 1994); *Borum v. Alabama Inter-Forest Corp.*, 719 So.2d 851 (Ala.Civ.App. 1998); and *Tolbert v. United Ins. Co. of America*, 853 F.Supp. 1374 (M.D.Ala. 1994) in support of his argument that he has presented a viable fraud claim. In *Kidder*, the court concluded that a plaintiff may assert a fraud in the inducement claim based upon representations made by the employer prior to establishment of the employer-employee relationship. 639 So.2d at 1363. The court explained that "[t]he elements of actionable fraud based upon a misrepresentation are: 1) a duty to speak the truth; 2) a false representation of a material existing fact made intentionally, recklessly, or innocently; 3) action upon the false representation by the plaintiff; and 4) loss, harm, or damage proximately resulting from the false representation." *Id.*, 639 So.2d at 1362. Similar to the elements of fraud applied in *Smith* and *Wade*, *Kidder* requires that Plaintiff demonstrate a "false representation" by HMA, which Plaintiff has not established based on the record before this court. *Id.* Furthermore, in *Kidder*, the Alabama Supreme Court held merely that the plaintiff <u>could</u> present a fraud claim, but did not address the merits of any such claim. *Id.* Hence, *Kidder* does not support Plaintiff's argument that he has satisfied the elements of a fraud claim.

Based on the foregoing, the court finds that Plaintiff has failed to demonstrate the requisite elements of a claim of promissory fraud. Accordingly, summary judgment as to this claim is due to be **GRANTED**.

### 2.    Negligence/wantonness

In his Complaint, Plaintiff asserts that HMA "negligently and/or wantonly made [him] a conditional offer of employment," with the only condition being that he successfully completed a medical examination. (Compl., ¶ 7). As a preliminary matter, the court notes that "negligence and wantonness claims cannot exist in the same action." *See Walker v. Humana Med. Corp.*, 415 So.2d 1107, 1109

---

In *Borum*, the Court of Civil Appeals found that the trial court had improperly granted summary judgment to an employer where the employer had provided the plaintiff with the terms of his salary, his bonuses, his benefits, a specific start date, and later "changed his mind" about hiring the plaintiff. 719 So.2d at 852. During discovery, the employer conceded that he had no intent to hire the plaintiff when he represented to the plaintiff that he had been hired. *Id.* at 852-53. Unlike the present case, therefore, the plaintiff in *Borum* was apparently promised employment, while the employer had no intent to carry out his promise. *Id.* Neither of these elements has been established in the current action.

Finally, *Tolbert* is factually distinguishable from this action. In that case, the court found that a State court <u>could</u> conclude that the plaintiff asserted a viable fraud claim where an employer falsely represented certain working conditions to the plaintiff in order to induce him to accept its offer of employment. 853 F.Supp. at 1377. The court explained further that, while an at-will employee normally has no cause of action for fraud relating to the <u>termination</u> of his employment, a misrepresentation by the employer that is "collateral" to the plaintiff's status as an at-will employee can result in an actionable injury. *Id.*

In the present case, despite Plaintiff's arguments to the contrary, Plaintiff was never an employee of HMA, and therefore no representation by HMA to Plaintiff could be collateral to an at-will employment relationship between the parties. Therefore, the court is not persuaded by the reasoning of *Tolbert* that Plaintiff has presented a cognizable fraud claim.

(Ala.Civ.App. 1982), citing *Thompson v. White*, 149 So.2d 797 (Ala. 1963) ("Wantonness and negligence cannot exist in the same act or omission, for the reason that wanton or wilful misconduct implies mental action; whereas that fact is absent in mere negligence. Wantonness and negligence are hence necessarily distinct colorings of a wrong to another's injury," citing *Louisville & Nashville R. Co. v. Smith*, 151, 50 So. 241, 244 (Ala. 1909)).  Therefore, the court will address each cause of action to determine whether Plaintiff has presented a viable claim of either negligence or wantonness.

To prevail on a claim of negligence, Plaintiff must present evidence to demonstrate that HMA (1) owed him a duty and (2) breached that duty, (3) which proximately caused (4) injury to himself.  *See Lowe's Home Centers, Inc. v. Laxson*, 655 So.2d 943, 945-46 (Ala. 1994).  "Proof of injury or damage alone is, therefore, generally insufficient to establish negligence."  *Id.* at 946, citing *Gollotte v. Peterbilt of Mobile, Inc.*, 582 So.2d 459 (Ala.1991).

HMA first argues that it owed no duty to Plaintiff.  "Whether a legal duty exists is a question of law."  *Patrick v. Union State Bank*, 681 So.2d 1364, 1368 (Ala. 1996), citing *Albert v. Hsu*, 602 So.2d 895 (Ala.1992).  "In determining whether a duty exists in a given situation, [ ] courts should consider a number of factors, including public policy, social considerations, and foreseeability.  The key factor is

whether the injury was foreseeable by the defendant." *Id.*, quoting *Smitherman v. McCafferty*, 622 So.2d 322, 324 (Ala.1993).

To support this element of his claim, Plaintiff argues merely that it was "clearly foreseeable" that he would rely upon the April 2004 conditional offer letter after he successfully passed the medical examination by declining other employment opportunities. The court disagrees. As explained *supra*, the offer letter did not specifically represent, nor did it imply, that Plaintiff had been hired. (Def. exh. 13). On the contrary, the letter indicated that Plaintiff had <u>not</u> been hired. (Id.). Therefore, as the letter explains, Plaintiff's application remained in the hiring pool, i.e., his employment status with HMA <u>did not change</u> as a result of the offer letter.

Accordingly, the court cannot agree that it was "clearly foreseeable" that Plaintiff would assume he had been hired and, during the ensuing thirteen months – during which he did not receive a start date from HMA, or any other official correspondence from HMA indicating that he had been selected for a position – decline three other offers of employment in reliance on that assumption. Therefore, the court finds that this argument falls short of demonstrating that HMA owed Plaintiff a duty during the hiring process.

The court finds no other basis to conclude that HMA owed Plaintiff a duty, except to clearly communicate the conditions of its offer of employment to Plaintiff.

However, the court's reading of the letter indicates that HMA <u>did</u> communicate these conditions by explaining that Plaintiff's application would remain in the hiring pool until he was selected for a position. Hence, if HMA owed him a duty to clearly communicate the conditions of its offer of employment, such duty was satisfied.

Assuming that Plaintiff could establish that HMA owed him a duty, and that such duty was breached by HMA by its failure to select him for a position, the court cannot agree that said breach proximately caused any injury to Plaintiff. For the reasons explained with regard to this element of Plaintiff's fraud claim, the record contains no evidence that Plaintiff's decision to reject other employment opportunities while waiting to receive a hire date from HMA was prompted by any action on HMA's part. Hence, Plaintiff's negligence claim must fail.

### 2.    Wantonness

Alabama courts define wantonness as

> the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. *Bozeman v. Central Bank of the South*, 646 So.2d 601 (Ala.1994). To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff.

*Alfa Mut. Ins. Co. v. Roush*, 723 So.2d 1250 (Ala. 1998), citing *Joseph v. Staggs*, 519 So.2d 952 (Ala. 1988).

To support his wantonness claim, Plaintiff argues that HMA omitted to tell him

that its offer of employment was conditional on the availability of a suitable job vacancy for him.  Because the letter did not expressly so state, Plaintiff avers that HMA cannot prove that such condition was ever communicated to him.  Plaintiff urges the court to assume, therefore, that HMA deliberately withheld this information, so that Plaintiff would be "ready and primed" to begin working for it at its pleasure, without risking that Plaintiff would withdraw his application if he was offered other, more desirable employment elsewhere.

The court finds no basis to make this assumption.  First, as explained *supra*, the letter did communicate to Plaintiff that he would not be hired until he was actually selected for a position.  Plaintiff points to no evidence in the record that he was ever actually selected for any position with HMA.  Second, even if the letter did not adequately communicate this condition, Plaintiff offers no evidence that HMA deliberately withheld this condition from Plaintiff, or that HMA omitted to inform Plaintiff of the condition with knowledge that, by doing so, Plaintiff would likely suffer injury.  On the contrary, the letter explained that Plaintiff should not resign from his employment until he received a hire date from HMA.  (Def. exh. 13).  This statement indicates that HMA actually took care to prevent its applicants from misconstruing the terms of the conditional offer by assuming they had been hired and would start work for HMA immediately.

26

Plaintiff offers no other basis to support his wantonness claim.  Accordingly, Plaintiff's wantonness claim must fail.

## V.    CONCLUSION

Based on the foregoing, Plaintiff has failed to present sufficient evidence to support the requisite elements of his claims for fraud, negligence, or wantonness. Therefore, HMA's Motion for Summary Judgment is due to be **GRANTED**.  A separate Order will be entered.

**DONE** this the twenty-sixth day of October, 2007.

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge